## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| DUSTIN BOHANNON | CIVIL ACTION NO. 21-805 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| KANSAS CITY SOUTHERN RAILWAY CO. | MAG. JUDGE KAYLA D. MCCLUSKY |

### MEMORANDUM RULING

Plaintiff Dustin Bohannon ("Bohannon"), an employee of Kansas City Southern Railway ("KCSR"), was injured while performing switching operations at a rail yard. Bohannon brings this action under the Federal Employers' Liability Act ("FELA") and moves for partial summary judgment regarding KCSR's liability.[1] For the reasons that follow, Bohannon's motion is granted in part and denied in part.

### Background

Bohannon worked as a conductor and railcar operator in KCSR's rail yard in Shreveport, Louisiana.[2] He was responsible for conducting switching operations, meaning he separated railcars and subdivided those cars onto separate tracks.[3] Bohannon moved the railcars via remote and pulled physical levers that detached the cars as they moved.[4] These levers are called "pin lifters" and attach to "couplers" located on both ends of railcars.[5] Couplers connect railcars and feature steel knuckles that automatically lock into

---

[1] Record Document 19.
[2] Record Document 19-7, p. 3.
[3] Id. at p. 4.
[4] Id. at p. 5.
[5] Record Document 19-10, p. 3.

place when linked together.[6]  To disconnect the couplers, rail workers pull the pin lifters, which in turn, open the knuckles and free the cars.[7]  On the day of the accident, Bohannon encountered a railcar[8] he could not detach; the pin lifter would not raise, so the railcars would not uncouple.[9]  Bohannon continued to wiggle the lever, then stopped the cars with his remote.[10]  As the car stopped, he continued to grip the pin lifter.[11]  Bohannon claims he felt pain in his left elbow during the stop.[12]  No witnesses were present at the time of his injury.[13]

Following the incident, Bohannon filed this action against KCSR under the FELA. Bohannon alleges KCSR maintained a defective decoupling mechanism on the railcar that he contends was responsible for his injury.  Among other claims, Bohannon argues that KCSR violated the Federal Safety Appliance Act ("SAA") and other safety regulations promulgated by the Federal Railroad Administration ("FRA").  Bohannon moves for partial summary judgment on the issue of liability and seeks a determination that KCSR is negligent as a matter of law.  He also urges the Court to rule that KCSR's safety violation caused his injury in whole or in part.  KCSR filed a response and sur-reply in opposition to Bohannon's motion.[14]

---

[6] See Norfolk & W. Ry. Co. v. Hiles, 516 U.S. 400, 401 (1996).
[7] Record Document 23-2, p. 15.
[8] The railcar was numbered RBOX 37556.  Record Document 19-8, p. 2.
[9] Record Document 19-7, pp. 5–6.
[10] Id. at p. 6.
[11] Id.
[12] Id. at p. 5.
[13] Record Document 23-2, p. 32.
[14] Record Documents 23 & 27-3.  The Court will grant KCSR's motion and allow its sur-reply to be filed in the record.

## **Standard of Review**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Celotex, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." Id. (internal citations and quotation marks omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in

support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor.  Armstrong v. City of Dall., 997 F.2d 62, 67 (5th Cir. 1993).

Local Rule 56.1 also requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried."  The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried."  W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Id.

## Law and Analysis

Rail workers have long experienced a high-risk work environment.  At the turn of the century, "the odds against a railroad brakeman's dying a natural death were almost four to one."  Brotherhood of R. R. Trainmen v. Virginia ex rel. Va. State Bar, 377 U.S. 1, 3 (1964) (citing Interstate Com. Comm'n, Third Annual Report of the Interstate Commerce Commission 85 (1889)).  For railroad switchmen, the average life expectancy was less than ten years.  Id. (citing Melvin L. Griffith, The Vindication of a National Public Policy Under the Federal Employers' Liability Act, 18 L. and Contemp. Prob. 160, 163 (1953)).  Recognizing these issues and the general hazards railroad workers faced, Congress passed the SAA in 1893 to provide standardized safety regulations.  A few years later, it also enacted the FELA to afford injured workers and their families a means for recovery if the worker's "injury or death result[ed] in whole or in part from the [rail carrier's] negligence." Norfolk, 538 U.S. at 144–45 (quoting 45 U.S.C.A. § 51).  The purpose of the FELA was to "shift part of the human overhead of doing business from employees to their employers."

4

CSX Transp., Inc. v. McBride, 564 U.S. 685, 691 (2011) (cleaned up).  Since the FELA's passage, rail carriers have had a nondelegable duty to provide their employees with a reasonably safe workplace.  See Shenker v. Balt. & Ohio R.R., 374 U.S. 1, 7 (1963). Generally, a FELA claim is based on negligence; it requires a plaintiff to prove duty, breach, foreseeability, and causation.  "In comparison to tort litigation at common law," however, "a relaxed standard of causation applies under FELA."  McBride, 564 U.S. at 692 (cleaned up).  Specifically, a worker must prove only that the employer's negligence, however minimal, played some part in causing the harm.  Id. at 694.

But when a rail carrier violates safety regulations like the SAA, rail carriers are held strictly liable, and the plaintiff "is relieved of the burden of proving negligence."  Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969).  This is because rail carriers have an absolute duty under the SAA, and when that duty is breached, the rail carrier is negligent as a matter of law.  To be sure, the SAA does not supplant the FELA as a separate cause of action.  Instead, a "violation of the [SAA] suppl[ies] the wrongful act necessary to ground liability under the [FELA]."  Carter v. Atlanta & St. Andrews Bay Ry. Co., 338 U.S. 430, 434 (1949).  To recover on a FELA claim based on an SAA violation, a plaintiff must prove two elements: first, a plaintiff must show the defendant violated SAA. And second, a plaintiff must prove that his injury resulted "in whole or in part from the railroad's violation of the Act."  Crane, 395 U.S. at 166 (cleaned up).

### A. Whether KCSR Violated the SAA

Bohannon argues that KCSR violated the SAA because the railcars would not decouple when he engaged the pin lifter.  The SAA mandates that rail carriers maintain

specific equipment in a prescribed condition. Relevant here is the requirement that rail carriers use railcars only if they are "equipped with . . . couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles." 49 U.S.C.A. § 20302(a)(1)(A). Additionally, "[a] railroad may not place or continue in service a car" if the railcar has a coupler with a coupler lock that is "inoperative" or "broken." 49 C.F.R. § 215.123(f)(3)(ii) & (v).[15] The general purpose of the SAA's coupler provision is "to assure the safety of railroad employees by requiring the railroads to furnish safe appliances for the coupling of cars." S. Pac. Co. v. Mahl, 406 F.2d 1201, 1203 (5th Cir. 1969). Moreover, Bohannon need not show he went "between the cars in order to uncouple them." Id. at 1205. Rather, "[t]he failure of a coupler to uncouple due to a defect therein is sufficient to establish liability under the [SAA]." Id. at 1204. "The test of compliance is the operating efficiency of the couplers with which the car is equipped." Id. (quoting Chi., St. P., M. & O. Ry. Co. v. Muldowney, 130 F.2d 971, 975 (8th Cir. 1942)).

Bohannon provides competent summary judgment evidence showing KCSR violated the SAA. Bohannon first supplies a post-accident report authored by the Senior Mechanical Maintenance Manager, who wrote that the coupler's knuckle and lock "were found to be wore-out causing [the] lock to hit [the] coupler."[16] That same manager later explained in a deposition that, as he operated the pin lifter, "the lock was hitting the coupler" and not working "how [it was] intended."[17] The Superintendent of the Shreveport Rail Yard agreed.

---

[15] A violation of the regulations promulged by the FRA is a violation of the SAA. Urie v. Thompson, 337 U.S. 163, 191 (1949).
[16] Record Document 19-8, p. 2.
[17] Record Document 19-10, p. 7.

6

When asked if "[t]he pin lifter was inoperative," the Superintendent responded that the pin lifter was not "working as intended" and said the pin lifter "just didn't raise the thrower to open that knuckle up."[18] Bohannon provides an expert report along with the incident report and deposition testimony; the expert similarly opined that the "car failed to uncouple as required."[19] He pointed to multiple photographs showing the coupler's "extreme wear" and explained how the couplers failed to operate as prescribed by law.[20] Based on his analysis, the expert concluded that KCSR violated the SAA and other safety regulations.[21]

KCSR does not dispute these facts. In its opposition, KCSR neither argues nor presents evidence that the coupling mechanism worked as required. KCSR's silence and Bohannon's evidence thus settle this first issue: the coupling mechanism on the car Bohannon operated was defective. The undisputed evidence shows the railcar was not "capable of being uncoupled" with the pin lifter because the coupler lock was "inoperative." See 49 U.S.C.A. § 20302(a)(1)(A) and 49 C.F.R. 215.123(f)(3)(ii). And under the SAA, the improper operation of a coupling mechanism is enough to constitute liability. See O'Donnell v. Elgin, J. & E. Ry., 338 U.S. 384, 390 (1949) ("[A] failure of equipment to perform as required by the [SAA] is in itself an actionable wrong"); see also Dull v. Conemaugh & Black Lick R.R., No. 87-6159, 1990 WL 52730, at *3 (E.D. Pa. Apr. 24, 1990) (holding that as an "integral part" of the uncoupling device, a defective pin lifter is "subject to the terms of the [SAA]."). Bohannon's motion for partial summary judgment

---

[18] Record Document 19-9, p. 5.
[19] Record Document 19-11, p. 2.
[20] Id. at p. 7.
[21] Id. at pp. 19–20.

7

is thus granted on this issue. The Court holds that KCSR violated the SAA by failing to provide a functioning coupler system on the railcar in question.[22]

### B. Whether KCSR's Violations Caused Bohannon's Injury

Though Bohannon is now relieved from the burden of proving negligence, he must still show that KCSR's SAA violation caused his injury. As noted above, proving causation under the FELA differs from the burden of proving proximate cause in typical negligence cases. Here, Bohannon must show that the employer's "negligence played any part, however small, in the injury or death which is the subject of the suit." Rogers v. Mo. Pac. R. Co., 352 U.S. 500, 508 (1957). To meet this relaxed burden, Bohannon points to a post-accident report referenced in his deposition that concluded his injury was caused by "equipment."[23] He cites his testimony explaining that "the pin lifter didn't lift[,] causing [his] arm to lock straight."[24] And he points to the expert report that explained that the defective condition of the railcar "caused the pin lifter to not lift and the knuckle to not open when Mr. Bohannon attempted to lift it."[25] Bohannon claims this "undisputed" evidence entitles him to summary judgment on the causation element of his FELA claim.

By contrast, KCSR argues Bohannon has not proved causation as a matter of law and disputes Bohannon's causation theory on two grounds. First, KSCR notes that Bohannon complained of arm pain four years before the injury at the rail yard. It offers only a 2016 office visit summary describing Bohannon's complaints to his doctor and

---

[22] Specifically, KCSR violated 49 U.S.C.A. § 20302(a)(1)(A) and 49 C.F.R. 215.123.
[23] Record Document 23-2, p. 32.
[24] Record Document 19-7, p. 3.
[25] Record Document 19-11, p. 3

8

testimony confirming the visit.[26] KCSR claims that Bohannon never reported this information to his employer or treating physician. On that basis, KCSR argues Bohannon's arm injury predated the accident at the rail yard and that Bohannon was in no way injured on the day of the incident. But KCSR produces no evidence disputing that Bohannon somehow hurt his arm as he conducted switching operations. In fact, the evidence provided by both parties supports the claim that Bohannon was injured on the day of the accident. For instance, in his deposition, Bohannon explained that his arm extended forward during the accident, causing immediate pain.[27] The accident report supplied by KCSR and the Superintendent's testimony confirmed Bohannon's account.[28] In short, the issue here is not whether Bohannon was injured; the issue is whether KCSR's safety violation caused Bohannon's injury in whole or in part.

Turning to its second argument, KCSR claims Bohannon's negligence was the sole cause of his injury. To illustrate, KCSR explains that on the day of the accident, Bohannon was both switching cars and controlling their movement with a remote on the ground; he could speed the cars up, slow them down, or stop them altogether.[29] Before his injury, Bohannon initiated the stop as he "wiggled" the lever and walked beside the railcar.[30] As the railcar stopped, Bohannon continued to grip the pin lifter, which allegedly pulled his arm straight and injured his elbow. KCSR argues Bohannon was negligent; it contends

---

[26] Record Document 23-2, pp. 22, 36–37. Bohannon objects to the office visit summary as unauthenticated hearsay. The Court did not consider the exhibit in ruling on Bohannon's motion. Because the issue of causation is left to the jury, the Court will not determine the admissibility of the exhibit at this time.
[27] Record Document 19-7, p. 5.
[28] Record Documents 19-9, p. 5 & 23-2, p. 26.
[29] See Record Document 19-7, p. 5.
[30] Id.

that his injury resulted from his remote operating use and decision to grip the pin lifter through the stop. For support, it cites an exchange with the Superintendent, where KCSR's counsel asked: "[W]hen you pulled on a pin lifter, and it didn't work, what did the rules say, if you recall?"[31] The Superintendent responded: "You let [the pin lifter] go . . . when a [rail worker is] lifting that pin lifter, if it's not going to separate the cars, and he's still moving . . . like Mr. Bohannon was . . . he would stop and . . . let the pin go and then try it again."[32] According to both parties, employees often encounter stubborn pin lifters. And pin lifters that do not uncouple cars with the first pull do not necessarily violate the SAA. See Mahl, 406 F.2d at 1205 (concluding that the SAA does not ensure that "every pull of the lever result[s] in a release of the coupler."). For that reason, both Bohannon and KCSR acknowledge that training and specific rules dictate how to respond to pin lifters in these situations. Though Bohannon claims he followed the relevant training and guidelines, KCSR contends he did not; it alleges the applicable rules Bohannon refers to expired and have no bearing on this case. Whatever those rules may be, they are not attached to either party's filings or articulated with any detail.

In any event, the "[p]roof of violation of certain safety-appliance statutes without more proves negligence and also eliminates contributory negligence as a consideration for any purpose." Rogers, 352 U.S. at 507 n.13. But "if a plaintiff's negligence is the *sole* cause of the injury, a defendant has no liability under the [FELA]." Gray v. Ala. Great S. R.R. Co., 960 F.3d 212, 216 (5th Cir. 2020), cert. denied, 141 S. Ct. 1386 (2021)

---

[31] Record Document 23-2, p. 31.
[32] Id. at pp. 31–32.

10

(emphasis added). Here, there is a factual dispute—though tenuous—about whether Bohannon's negligence was the sole cause of his injury. KCSR claims Bohannon negligently responded to the defective coupling system by stopping the train and continuing to grip the pin lifter and supports its theory with the testimony of a seasoned supervisor. On the other hand, Bohannon argues he was injured because the pin lifter failed to lift and that his conduct was appropriate; he, too, has evidence to support his theory. Because of this factual dispute, the Court concludes the issue of causation "should be submitted to a jury." Richards v. Consol. Rail Corp., 330 F.3d 428, 437 (6th Cir. 2003).

If a jury could find Bohannon to be 100% at fault, then KCSR's violation could not have contributed to his injury, even in part. Funez v. Kan. City S. Ry. Co., 62 F. Supp. 3d 531, 534–35 (E.D. La. 2014). Though the Court questions KCSR's causation argument, the Court "need not resolve the conflict between [] competing theories of causation, for that decision [is] for the jury." O'Donnell, 338 U.S. at 386; see also Funez, 62 F. Supp. at 534 ("While the Court has significant doubts as to the plausibility of this [causation] opinion, such concerns are inappropriate on a motion for summary judgment"); LeBeau v. Union Pac. R.R. Co., No. 18-4390, 2020 WL 878287, at *6 (M.D. La. Feb. 21, 2020) ("[T]his Court finds that causation is properly determined by the jury"). This ruling does not undercut Bohannon's relaxed burden of proving causation at trial. To be sure, KCSR may only escape liability to the extent Bohannon's negligence was the sole cause of his injury—contributory negligence alone is not enough. At this time, though, the Court cannot make the causation determination as a matter of law. For this reason, Bohannon's motion for summary judgment is denied in this regard.

11

## Conclusion

Bohannon's motion for partial summary judgment[33] is **GRANTED IN PART and DENIED IN PART** for the above-stated reasons. The Court concludes that KCSR violated the SAA because the coupling mechanism on the railcar at issue was inoperative. Bohannon's motion is **DENIED** on the issue of causation.

**IT IS FURTHER ORDERED** that Defendant's leave to file a sur-reply[34] is **GRANTED**, and the Clerk is ordered to file the sur-reply in the record.

**THUS DONE AND SIGNED** this 24th day of May, 2022.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[33] Record Document 19.
[34] Record Document 27.